Good morning, ladies and gentlemen. This is Judge Easterbrook. You will hear me but not see me today. And we are ready to hear oral argument in the first case, Owner-Operator Drivers Association against Holcomb. One word of warning. Well, actually two words of warning. Since we are all appearing remotely in one way or another, there is always the risk that something will go wrong with the communications link and we may have trouble hearing each other. If that happens, I will ask you to pause and we will get back in contact so that everybody can be heard. The other is that we will take a 10-minute break after the second case before we call the third case. So we are ready to go in the first case. Mr. Cullen. Thank you, Your Honor, and may it please the court. My name is Paul D. Cullen Sr. and I am honored today to appear on behalf of the Owner-Operator Independent Drivers Association, 160,000 members who are small business truckers, as well as on behalf of several of their individual members. The district court's decision permits a public-private partnership to defeat at the pleading stage a dormant Commerce Clause challenge, despite serious flaws undercutting the Rule 12b-6 ruling. The report and recommendation at page 10 states that the case at hand is very similar to Airdsley. Moreover, the ITRCC is acting just as the city acted in Airdsley. It is using property to raise money. With all due respect, this is very much unlike Airdsley. The Airdsley plaintiffs had alleged that the city was acting as a market participant, an allegation important to their antitrust claim but fatal to their Commerce Clause claim. This is Judge Easterbrook. Are you contending that the toll system is in any way discriminatory based on whether a truck comes from or goes to out-of-state? We're contending that the toll system has a much greater impact on interstate truckers who pass through the state. Could you answer my question? Are you contending that these tolls are discriminatory? Yes. In what way? The toll raised 35% on interstate trucks has a much higher burden on them than it does on ordinary trucks. Let me try one more time. Do you contend that the tolls charged vary depending on the truck's origin or destination? No. Okay. Thank you. If the tolls are excessive compared to the benefits received... Oh, this is Judge Rovner. Good morning. Good morning. Why would the drivers continue to use the toll road when they have other options? Isn't this a self-correcting problem? In other words, if the tolls get too high, the drivers find another route. Well, the availability of other routes and opportunities was not a factor noted by the Supreme Court in Evansville. They paid the airport landing fee or boarding fee. They could have taken a bus. They could have taken a train. They could have done a variety of other things. The availability of other alternative travel modes was not a factor there and shouldn't be a factor here either. And there are any number of reasons why drivers elect to go on a turnpike. They're often superior. There are safety advantages to a well-engineered highway, a variety of reasons why they might want to pick it. But that's not a factor in Evansville and shouldn't be a factor here. So let me ask a related question. Are you arguing that there's something unique about the Indiana toll road such that there are no substitutes for it? Because there's U.S. 20, there's U.S. 30. And the reason I think that may be relevant is because you seem to be saying that only the state of Indiana can operate a toll road. And that's, of course, historically inaccurate. There have been many private toll roads over the history of the United States. But I wonder why you think this is now a state monopoly. Well, I don't think we we it probably is, but I don't think we've alleged that it is a state monopoly. You can go down parallel roads if you want to. But when the state builds a very fine limited access road, fewer red lights and less traffic crossing the roads, et cetera, it's a very desirable thing. When they build such a limited access facility, it's not open to anyone who doesn't actually agree to use it and to pay the fee. It's called the user fee. And whether it's a monopoly or not, the user fees under Evansville were and Northwest Airlines have been judged by the cost of the weather. It's related to the cost of providing the facility or the benefits conferred. And the fact that there may be alternatives has never been a factor in the Supreme Court level. So the Supreme Court has never said that there has to be a penny to penny assessment of what the costs of heavy truck traffic are, for example, on the road. They've said a rough approximation is about all you can do. And I'm not sure on what evidence you think the old toll was better. This 35 percent higher toll, of course, is more money, but maybe that's a more accurate measure. We allege in the complaint in paragraphs, I believe it's 103 to 106 or 93 to 106 in that area. That the tolls prior to the 35 percent increase were adequate to cover the expense of allowing the trucks to travel up and down the turnpike. Perfectly adequate. It was no under tolling at that point. When they increased it, that increase was not justified by any increased costs imposed by the trucks or anything. And the claim that trucks provide more wear and tear on the highway is specifically dealt with in the complaint. And it creates a factual issue. It was adequate before the 35 percent increase. It was excessive in that the toll was excessive because the cost of taking care of these trucks, even though they may cause more wear and tear, was adequately taken care of prior to that. So maybe we should talk about market participants because, of course, in the market, if somebody wants to raise the price for their product, they're entirely able to do so. And they'll see if consumers will continue to buy it at the new higher price, whether it's a car or whether it's a food processor or whether it's anything else. So in this instance, the state tried to see. So I'd like you to talk about that. And actually, I would also like a quick comment. And what pertinence do you think there is, if any, of the 2019 amendment that the Indiana legislature enacted limiting use of the funds to roads with a nexus to the toll road? The rule is that the toll should be expended on maintaining and operating the toll road itself and anything functionally related. Take a look at Bridgeport and the Bridgeport Ferry case. It's explained very carefully there in the Second Circuit. So the fact that the money has been earmarked for the counties within which the toll road passes has no relationship to the functional relationship standard outlined in the Bridgeport case. Are you contending that a state can never be a market participant for a toll road that is on state property? Yes, the state highway is an essentially sovereign activity. I mean, there are other people who get involved in highways, but running an interstate road is an essentially a state function. And the market participant doctrine doesn't extend that far. So, in other words, you think there is no scenario to build a convenience road or a bridge just for the purpose of generating revenue through tolls the same way that a well-located private property owner might do? When you say there are no conditions under which that could happen, I don't think we're going that far. But under these conditions, when they're imposing a toll increase of 35%, when the prior toll covered all the costs of providing the facility to the drivers and was reasonably related to the value created for the drivers, when they exceed that under these circumstances, that should not be covered by the market participant doctrine. So, in other words, your first answer was incorrect. You are contending that a state can never be a market participant for a toll road on state property. Is that what you're saying now? That violates one of the disqualified features. Could I just get a yes or no, because I got a yes before, and I think I'm getting a no now. Roads that are part of an instrumentality of interstate commerce, they've never approved. We have no cases that ever approved the market participant defense under those circumstances. So, no, they can do it, but they're not covered by the market participant defense. So, you're distinguishing Ensley, I take it, because certainly the Chicago Skyway is part of Interstate 90. Right. Well, yes. What we would say is that the exception that says you can't use the market participant defense on an interstate thoroughfare like this should have applied in Ensley. It wasn't, but that's another matter. I don't know. It seems to me that the market participation discussion in Ensley is very relevant to the holding. In other words, the plaintiff conceded a fact, and the court then demonstrated how that concession was dispositive to the market participant analysis. While also finding that it would have reached the same conclusion without the concession, and I don't know that I'd call that dicta. I'm just, I'm not sure. Well, it never did say that it would have reached that conclusion. It never decided any facts. It merely said in very general language what the facts suggest. That's not a finding. That's not a holding. And it was not necessary, but what it did say is that the defendant... Mr. Coulton, you are into your rebuttal time. If you wish to save any time, this would be a good time. Could he finish answering my question? Certainly. Of course. The court in Ensley said that the plaintiffs sealed their own fate, meaning everything the court needed to rule against them and find that they're blocked by the market participant doctrine was contained in their pleading. Nothing further said was an integral part of that decision. It didn't change the analytical structure of that decision, and it conflicts with later decisions. Ensley is what, 2000? Since then, there have been a variety of Supreme Court decisions which affect the legal framework within which these decisions are made. The Tennessee Wine case, the United Haulers and Department of Revenue of Kentucky case, where the court had an opportunity to invoke the market participant and declined to do so. Its exception for using police powers under ATA versus City of Chicago. All these are new Supreme Court decisions that cast some doubt on the ability of the longevity of the Ensley decision, assuming that what it said was not dictum. Thank you. Which it was. I will reserve whatever time I have for the rebuttal. Thank you, Mr. Cohen. Mr. Estrada. Good morning. This is Miguel Estrada on behalf of the police. Thank you, Your Honor, and may it please the court. The district court was right to dismiss the complaint on the basis of Ensley, which is controlling and not dictum. When the state furnishes a toll road in exchange for money, it provides an asset, which is a faster route, while other routes remain available. As both Judge Wood and Judge Wagner pointed out, there is not an element of regulation in that. The other side relies, if you were to impose a tax on funerals, for example, which no one can avoid, you have the conjunction of the coercive power of the state and something that no one can avoid dying. You would have something that is the epitome of regulation. If you have a state acting as an owner and creating an asset, all the more so here when the asset is actually leased to a private company to run on a private basis, you have the epitome of market participation. That's what Ensley essentially concluded. And for the reasons that we have outlined in our brief, having to do with the fact that the state actually has gotten out of the business and turned it open to a private company to run, this case is even more powerful than Ensley. So, Mr. Strada, can I ask a question? I wonder how important it is to your theory of this case that, as you assert, there are substitutes. So let me postulate. Suppose interstates 30 and 20 over the many years that the Indiana toll road has existed have been allowed to deteriorate to the point where they can't take heavy truck traffic. You see signs like that from time to time, no trucks over so many tons or axles or the like. And so what if there isn't a good substitute? And secondly, of what importance, if any, is it that the Indiana toll road is part of the interstate highway system, which is obviously a federally subsidized system that connects the entire United States, making it look less private and more public? Well, let me take the last question first. I think the last question was obviously the case in Ensley with the Skyway, as you yourself pointed out earlier. I think it is possible, as we also saw in the Mason and Dixon case in the 6th Circuit, which involves a bridge that has traffic crossing to Canada with the 6th Circuit that held that that too was a market activity that was exempt from Commerce Clause, that it is possible to have particular segments that offer faster facilities for pay be not regulatory activity, but market activity. With respect to the importance of other choices or options, I have to say that the Supreme Court cases are not entirely clear on that. It is possible to have a market, as you know, in the antitrust sense in which you can have a natural monopoly, for example, and that would not make it any less of a market. I think the important issue here is not so much the availability of alternatives as such, but whether there is an element of regulatory coercion on the part of the state and whether the state is using its power to regulate. Keep in mind that the textual origin of the market participant doctrine is that we start with a power that is given to Congress to regulate commerce among the several states, from which a negative pregnant is then derived that states may not regulate certain things. So is that how you distinguish American Trucking Association against the city of Los Angeles, for instance? Well, to be sure, because one of the core principles of the Dormant Commerce Clause, which some people have said is one of the parts of the Constitution that doesn't actually exist, but does, is that it operates in the absence of action by Congress. So once you start working in an area in which Congress has actually passed the statute, you may be dealing with the effect of the statute and perhaps federal preemption, but you are not in a pure area of Dormant Commerce Clause analysis. I think you put those cases to one side because a pure Dormant Commerce Clause analysis presupposes that Congress has enacted. In cases like this one, the question is, as in Inslee, is the state acting as an owner rather than as a regulator when it furnishes an additional facility for pay for the convenience of those who choose to use it? With respect to the question whether Inslee is controlling a circuit precedent, it clearly is. You go to cases like Wetzel, which is a case from this court, and what that teaches is to be sure. There are things that are ill-considered, that should not be followed by a subsequent panel. But there are also things known as alternative holdings. If you look at the analysis in Inslee, there was a prefatory comment at the beginning of the analysis that essentially said these folks treated themselves out of court. The bulk of the opinion goes out almost for a page and a third based on the facts of the case to actually conclude on the court's own terms that this was market activity. It would be unfair, I think, and really unwarranted to call that dictum in the sense that, as Wetzel said, it was not a musing about a hypothetical case, not in front of the court, but an analysis of the facts of the case that rebuts many of the things that counsel asserts in this case. First and foremost, the proposition that roads cannot be the subject of market activity under the market exception. Does the market exception, I'm sorry, does the market participation exception always apply to toll roads? Can you give me an example of a toll exacted for a publicly owned road where the state is not a market participant? Oh, no, it is not our contention, Judge Rogner, that toll roads are inherently market participation. I think it depends on what the state does. You know, to go back to the Los Angeles case, for example, if the state were to couple a toll road with, say, a criminally backed requirement that you have to use that road because they really needed to raise the revenue, that would cease to be market activity, even though on the surface of things it is a toll road. You really have to look at the mix of powers that the government is exercising. If the government is acting as an owner, that is to say, leasing the property for pay like any other owner would and exercising its police power as it would to back up any other private owner. I mean, you know, the state clearly would intervene if somebody were shoplifting. So if somebody doesn't pay the toll, there is no reason why the state would not come to the aid of the toll operator in that case as well. That is just market participation. But as in the Los Angeles case, if the state then goes further and tries to require people to use the facility through the compulsion of powers available only to the state, that would not be market participation. Because at all times, the question is whether on the fact of the case, what is going on is regulation or market participation. Our contention is more modest. It is that toll roads can be market activity, not that they always need to be. So is your position just flatly inconsistent, or is our position for that matter in the Seventh Circuit, flatly inconsistent with the Sullivan against New York Transit Authority decision? There's lots of language there that makes it seem as though these roads are in fact performing a government function. I will say that they disagreed with you in Sullivan 1. And so I'm not going to color that any more roads than it is because they did in Sullivan 1. With respect to whether this is a disagreement that will ever interest the Supreme Court, I tend to doubt it because it's a shallow, longstanding split that hasn't been taken to the Supreme Court. And at the end of the day, if you look at Sullivan 2, when all the wash was done, the claim failed. And interestingly enough, if you look at Sullivan 2, it failed because the Second Circuit took a view of Evansville that is directly contrary to the view that the plaintiffs are taking here. They said that the funds didn't have to be so closely tied to the actual highway and any number of other things that are contrary to the view of Evansville that they take here. Our basic point here is that Inslee is controlling and it should be the end of the analysis in the circuit. The next point is that even if it weren't, this is not a case in which the case could go forward because there is not a good commerce clause case pleaded in any event. Their view of Evansville is mistaken. As you could see, for example, from the opinion of then Judge Breyer in the Flint case, Evansville is universally recognized as a user fee defense that a state may use. The very end of the analysis by then Judge Breyer in the Flint case was since this passes the test in Evansville, I need not consider whether this could be good under complete auto or Commonwealth Edison. Forgive me for interrupting, but if Evansville applies generally to toll roads, then the fee should not be excessive in comparison with the benefit that's conferred. Would you agree that there's some factual issues regarding that comparison that would preclude dismissal without some discovery? No, because I think that their conception of Evansville is mistaken. I think Evansville, even if you take it as a test that could conceivably apply here, is one that looks at the highway system, at the highways that the state is entitled to fund in gross and whether the tolls are being raised for functionally related transportation. This is why the action by the Indiana legislature is important, that all the funds will be used to fund related transportation needs of roads that feed into this toll road. And that's a public act by the legislature that is traditionally noticeable and that we submitted to the district court. So that even if Evansville were the four corners of the test, it would fail at that stage because there is no disputable fact that you can get out of the complaint. But, you know, my larger point is that it isn't, Your Honor. I mean, my larger point is that this is governed by general commerce doctrine and that the rigid categories that they're trying to sell you between tolls and taxes are belied by the very case that they cite. If you read Evansville, it pulls in distinctly of tolls and taxes and it describes tolls as taxes from one paragraph to the next. And so the notion that there is a special category of a legal test for highway tolls that is dedicated only in Evansville, and that's the only thing that can be used, is fall from the face of Evansville. You can read Justice Brennan's opinion and see that in the same sentence, he says the toll is a tax. And as a general matter of commerce, plus jurisprudence, you you have generally for cases like this where there is no allegation of express discrimination in no allocation issue, a very lenient commerce plus test. And there's nothing in the complaint that even remotely pleads anything that could be a violation under traditional commerce plus principles, whether you want to go to the complete auto or Commonwealth Edison or this court or this court's opinion in national pain codings. And so once you understand that Evansville is not this exclusive test, because on the face of it, it doesn't have the exclusive test for tolls. It doesn't say that there's nothing in the complaint that gives rise to any cause of action that could be pleaded. One final point I should make on this, because my time is expiring, is that Evansville was decided in 1972, which is almost 50 years ago. You would think that if the plaintiffs were correct in their reading of Evansville, the federal supplement would be chock full of decisions by federal district judges, carefully analyzing how federal how state highway funds are being spent with green shades to make sure that the money spent on filling potholes really did not excessively exceed that that was collected in pots. And yet, in 50 years since Evansville was decided, you will find a positive cases of that description. I think that's a very compelling evidence that this test is not what is actually represented. Thank you, Your Honor. Thank you, Mr. Estrada. Anything further, Mr. Briefly, if you look at the so-called ruling in Evansville and Erdsley and Hensley, excuse me. It says very simply that if there is a transaction between a party for the use of an item or a facility or something, and a fee is charged for that, they are protected by the market participant theory. That is breathtaking. There are absolutely no limitations imposed by that. If every state in the union were to do that, every state could ignore the Commerce Clause and charge whatever the market will bear to interstate truckers to generate revenue to fund infrastructure projects throughout the state as they do here without any functional relationship with the turnpike for which the toll is imposed. No court has held that. The Supreme Court would never tolerate that. Read Tennessee Wine to get a very good view of how the court views the importance. Thank you. The case is taken under advisement.